*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

No. 07-5077

DOUGLAS B. STALLEY,

*Plaintiff-Appellant,*

*v.*

METHODIST HEALTHCARE,

*Defendant-Appellee.*

Nos. 07-5077/5147/5358/
5360/5362/5363/5364

No. 07-5147

DOUGLAS B. STALLEY,

*Plaintiff-Appellant,*

*v.*

SUMNER REGIONAL HEALTH SYSTEMS, INC.,

*Defendant-Appellee.*

No. 07-5358

DOUGLAS B. STALLEY,

*Plaintiff-Appellant,*

*v.*

ERLANGER HEALTH SYSTEM,

*Defendant-Appellee.*

Nos. 07-5360/5362/5364

DOUGLAS B. STALLEY,

*Plaintiff-Appellant,*

*v.*

WELLMONT HEALTH SYSTEM (07-5360),
MOUNTAIN STATES HEALTH ALLIANCE (07-5362),
THE BAPTIST HEALTH SYSTEM OF EAST TENNESSEE
(07-5364),

*Defendants-Appellees.*

No. 07-5363

DOUGLAS B. STALLEY,

*Plaintiff-Appellant,*

*v.*

COVENANT HEALTH,

*Defendant-Appellee.*

1

Appeal from the United States District Courts for the Western District of Tennessee
at Memphis, the Middle District of Tennessee at Cookeville, and the Eastern District
of Tennessee at Chattanooga, Greeneville, and Knoxville.
Nos. 06-02605; 06-00074; 06-00194; 06-00217; 06-00216; 06-00359; 06-00295—
Jon Phipps McCalla, Robert L. Echols, District Judges; Curtis L. Collier, Chief District Judge.

Argued:  December 4, 2007

Decided and Filed:  February 28, 2008

Before:  RYAN, BATCHELDER, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Kenneth L. Connor, WILKES & McHUGH, Leesburg, Virginia, for Appellant.  Edward
K.M. Bilich, JONES DAY, Washington, D.C., Daniel M. Stefaniuk, SPEARS, MOORE, REBMAN
& WILLIAMS, Chattanooga, Tennessee, John L. Miller, WAGNER, MYERS & SANGER,
Knoxville, Tennessee, Reuben N. Pelot IV, EGERTON, McAFEE, ARMISTEAD & DAVIS,
Knoxville, Tennessee, for Appellees.  **ON BRIEF:** Kathleen C. Knight, WILKES & McHUGH,
Tampa, Florida, for Appellant.  Edward K.M. Bilich, Gregory M. Luce, Paul R. Reichert, JONES
DAY, Washington, D.C., Daniel M. Stefaniuk, Fred H. Moore, SPEARS, MOORE, REBMAN &
WILLIAMS, Chattanooga, Tennessee, Reuben N. Pelot IV, EGERTON, McAFEE, ARMISTEAD
& DAVIS, Knoxville, Tennessee, Robert L. Trentham, MILLER & MARTIN, Nashville, Tennessee,
Martin B. Bailey, WAGNER, MYERS & SANGER, Knoxville, Tennessee, for Appellees.

_____

**OPINION**

_____

        ALICE M. BATCHELDER, Circuit Judge.  Plaintiff-Appellant Douglas B. Stalley
("Stalley") filed seven separate lawsuits in the district courts in Tennessee — in addition to
numerous cases in other jurisdictions against different defendants — claiming that Defendants-
Appellees Methodist Healthcare ("Methodist"), Sumner Regional Health Systems, Inc. ("Sumner"),
Erlanger Health System ("Erlanger"), Wellmont Health System ("Wellmont"), Mountain States
Health Alliance ("Mountain States"), Covenant Health ("Covenant"), and The Baptist Health System
of East Tennessee ("Baptist")[1] (collectively referred to as "Appellees") all violated the Medicare
Secondary Payer Act ("MSP"), 42 U.S.C. § 1395y(b).  In none of the virtually identical complaints
does Stalley allege any direct injury.  Instead, the complaints are premised on his belief that the MSP
is a *qui tam* statute granting him standing to sue as a private attorney general.  The several district
courts, following the clear language of the MSP and a plethora of case law, separately ruled that the
MSP is not a *qui tam* statute and, therefore, Stalley does not have Article III standing to raise these
claims.  Stalley appeals those decisions.  Because we find no basis upon which to hold that the MSP
is a *qui tam* statute, and no basis upon which to find that Stalley can otherwise demonstrate standing,
we **AFFIRM** the judgments of the district courts.

_____

[1]Stalley also sued unnamed John Does 1 through 10 in each of the complaints.

# I.  BACKGROUND

## A.  Procedural History

Stalley sued Appellees complaining that they violated the MSP by failing to reimburse Medicare for unspecified payments that Medicare supposedly advanced to treat unspecified medical errors made with regard to unspecified Medicare beneficiaries at unspecified health care facilities owned by Appellees.  Appellees all filed motions to dismiss, asserting that Stalley lacked standing to raise his claim, Fed. R. Civ. Proc. 12(b)(1),[2] and that Stalley failed to state a claim upon which relief may be granted, Fed. R. Civ. Proc. 12(b)(6).

The District Court for the Eastern District of Tennessee consolidated the actions filed in that district, namely, those against Erlanger, Wellmont, Mountain States, Covenant and Baptist, and dismissed the claims, both because Stalley lacked Article III standing to assert them and because Stalley failed to state a claim upon which relief could be granted.  The District Court for the Middle District of Tennessee dismissed Stalley's complaint against Sumner on the same grounds.  Finally, the District Court for the Western District of Tennessee dismissed Stalley's claim against Methodist, holding that Stalley lacked standing to assert his claim; the court did not address the question of whether Stalley had raised a claim upon which relief could be granted.  All of the district courts held that the MSP is not a *qui tam* statute.  Stalley timely appealed all three decisions, and the cases were consolidated for appeal because they raise identical issues of law and fact as to all Appellees.

## B.  The Medicare Secondary Payer Statute

Medicare is a federal health insurance program that provides health insurance benefits to people 65 years of age or older, disabled people, and people with end-stage renal disease.  42 U.S.C. § 1395c.  For a number of years, Medicare served as the primary payer of health costs for eligible individuals.  *Mason v. American Tobacco Co.*, 212 F.Supp.2d 88, 91 (E.D.N.Y. 2002).  In 1980, however, Congress enacted the MSP to counteract escalating health-care costs.  *United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 21 (1st Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 1104 (2008).  The MSP "makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer."  *Id*.  "This means that if payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay."  *Cochran v. United States Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002).  Consequently, the MSP makes Medicare a secondary payer and designates certain private entities — such as a group health plan, a worker's compensation plan, or an automobile or liability insurance plan — as "primary payers" that have the responsibility to pay for a person's medical treatment.  *See Glover v. Philip Morris USA*, 380 F.Supp.2d 1279, 1282 (M.D. Fla. 2005); *see also* 42 U.S.C. 1395y(b)(2)(ii).  If the primary payer has not paid and will not promptly do so, however, Medicare can conditionally pay the cost of the treatment.  *United Seniors*, 500 F.3d at 21 (citing 42 U.S.C. § 1395y(b)(2)(B)).

The MSP empowers Medicare to seek reimbursement for any conditional medical payments from the primary payer — or from the recipient of the payment — if it is demonstrated that the primary payer has responsibility to pay.  *Id*. (citing 42 U.S.C. § 1395y(b)(2)(B)); *see also Cochran*, 291 F.3d at 777 ("The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her.").  One demonstrates that a primary plan is responsible for reimbursing Medicare by showing a "judgment, a payment

---

[2]Although Covenant conceded that Stalley had standing to raise his claim, we are not bound by that concession, but must satisfy ourselves not only of our own jurisdiction, but also of that of the district court. *See Mitchell v. Maurer*, 293 U.S. 237, 244 (1934).

conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii).

In order "to facilitate recovery of conditional payments, the MSP provides for a governmental action against any entity that was responsible for payment under a primary plan, 42 U.S.C. § 1395y(b)(2)(B)(iii), and subrogates the United States to the rights of a Medicare beneficiary to collect payment under a primary plan for items already paid by Medicare, § 1395y(b)(2)(B)(iv)." *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006). "The MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights." *Id.* (citing 42 U.S.C. § 1395y(b)(3)(A). Stalley contends that the MSP private right of action is actually a *qui tam* provision, allowing any individual to bring a suit on behalf of the United States.

## II.  STANDARD OF REVIEW

We review de novo a district court's dismissal of a case for lack of standing — lack of subject matter jurisdiction — under Fed. R. Civ. Proc. 12(b)(1). *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007) (citing *Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 540 (6th Cir. 2004)).

## III.  ANALYSIS

### A.  The MSP is not a *qui tam* statute.

Stalley, as the party invoking federal subject matter jurisdiction, has the burden of demonstrating that he satisfies each element of Article III standing. *Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) (citing *Lujan v. Defender's of Wildlife*, 504 U.S. 555, 561 (1992)); *see also Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("As we have frequently explained, a plaintiff must meet three requirements in order to establish Article III standing."). "The irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, Stalley must show that he has suffered an "injury" in fact. *Id*. He must have suffered "a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'" *Vt. Agency*, 529 U.S. at 771 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Second, Stalley must establish a causal connection between the alleged injury and the Appellees' conduct of which he complains. *Lujan*, 504 U.S. at 560. That is, the injury must be "fairly traceable" to the Appellees' actions. *Id*. (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)). Third, Stalley must demonstrate that the injury is redressable in this action. *Vt. Agency*, 529 U.S. at 771. There must be a "substantial likelihood," *id*., as opposed to mere speculation, that a favorable decision in this court will redress Stalley's alleged injury, *Lujan*, 504 U.S. at 561.

Stalley does not claim that Appellees' alleged conduct injured him personally. He does not allege that he is a Medicare beneficiary, that he is Medicare eligible, or that he was denied by some primary payer coverage for a medical procedure. Thus, it is irrefutable that Stalley does not have standing in the traditional sense to bring this action. Stalley's claim is that the MSP — because of the provision for a private right of action set out in 42 U.S.C. § 1395y(b)(3) — is actually a *qui tam* statute that affords Stalley standing to bring his claims on behalf of the United States as a private attorney general. Therefore, we must decide whether the MSP is in fact a *qui tam* statute.

A *qui tam* statute allows a private person to bring an action in the name of the United States, that will benefit both the person and the government. *Vt. Agency*, 529 U.S. at 769. The *qui tam*

action is for redress of an injury to the government; it is the government's injury that confers standing upon the private person, *id.* at 773-74, 777-78, and the *qui tam* plaintiff has standing because he is a partial assignee of the United States's claims against a defendant, *id.* at 773. As the *Vt. Agency* Court's detailed account of the history of *qui tam* actions makes clear, in the United States, the right to bring a *qui tam* action is entirely created by statute. *See id.* at 774-78; *see also United Seniors*, 500 F.3d at 23-24 ("There presently is no common-law right to bring a qui tam action, which is strictly a creature of statute.") (citing *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 84 (2d Cir. 1972)). And only in dictum has the Court indicated that the right to bring a *qui tam* action might be inferred from a statute's terms rather than explicitly conferred. *See Vt. Agency*, 529 U.S. at 777, n.5 ("We have suggested, in dictum, that 'statutes providing for a reward to informers which do not specifically either authorize or forbid the informer to institute the action are construed to authorize him to sue.'" *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541, n.4 (1943)).

The False Claims Act ("FCA") is the most commonly invoked *qui tam* statute. *Id.*[3] Indeed, it is no exaggeration to say that the FCA — or its predecessor — is virtually the *only qui tam* statute whose invocation is actually the subject of any Supreme Court case law handed down in this century or the last. Hence, it is the FCA that is the benchmark for evaluating other statutes claimed to be *qui tam* statutes.

The FCA explicitly provides that "a person may bring a civil action . . . for the person *and for the United States Government*," 31 U.S.C. § 3730(b)(1) (emphasis added); that is, the plain language of the FCA empowers private individuals to sue on behalf of the United States. Furthermore, the United States remains the real party in interest in a *qui tam* suit brought under the FCA, while the "private attorneys general," or "relators," benefit from the action by sharing with the government in the monetary recovery of the lawsuit. *United Seniors*, 500 F.3d at 25; 31 U.S.C. § 3730(d).

The FCA tightly regulates the actions that private plaintiffs may bring under its provisions. For example, the private plaintiff must bring the action in the name of the United States, 31 U.S.C. § 3730(b)(1); the action can be dismissed only with the written consent of the court and the Attorney General, *id.*, but may be dismissed without the consent of the private plaintiff, *id.* at (c)(2)(A); before serving the complaint on the defendant, the private plaintiff must file it with the court, in camera, and disclose substantially all of the material evidence to the government, *id.* at (b)(2). Of particular importance, the right of the private plaintiff to any recovery in the action is strictly limited, *id.* at (d); and the government may elect to proceed with — and therefore conduct — the action, or decline to do so, *id.* at (b)(4); but even if the government elects not to proceed with the action, it retains a significant role in the way the action is conducted, *id.* at (c)(3) and (4).

The MSP, which Stalley would have us declare a *qui tam* statute, differs significantly from the FCA. First, the MSP contains no provision permitting a private plaintiff to bring an action on behalf of the United States. Rather, the MSP provides for two separate causes of action: one by the

---

[3] In a footnote, the Court went on to say that, in addition to the FCA:

[t]hree other *qui tam* statutes, all also enacted over a hundred years ago, remain on the books. *See* 25 U.S.C. § 81 (providing cause of action and share of recovery against a person contracting with Indians in an unlawful manner); § 201 (providing cause of action and share of recovery against a person violating Indian protection laws); 25 U.S.C. § 292(b) (providing cause of action and share of recovery against a person falsely marking patented articles).

It is worth noting that the first of these three, 25 U.S.C. § 81, has been entirely redrafted, and the *qui tam* provision removed, *see* 25 U.S.C. § 81 (2000). Further, the Court's footnote also included, by way of comparison to the *qui tam* statutes, two statutes that provide for forfeiture to an informer of a share of property, but do not authorize suit by the informer, *viz.*, 18 U.S.C. § 962 and 46 U.S.C. § 723.

United States, 42 U.S.C. § 1395y(b)(2)(B)(iii); the other by private individuals, 42 U.S.C. § 1395y(b)(3)(A). The provision in the MSP creating a private right of action contains no language requiring that the private plaintiff bring the action on behalf of the United States. As the First Circuit pointed out in *United Seniors*, had Congress intended that the private action authorized by the MSP be brought on behalf of the United States, it would surely have made that clear in the language of the statute, inasmuch as "Congress created the causes of action in FCA § 3730(b) and MSP § 1395y(b)(3)(A) during the *same month* in 1986." *United Seniors*, 500 F.3d at 24. Congress could have explicitly made the MSP a *qui tam* statute, but it did not.

Second, the MSP does not contain the procedural safeguards that are part of the FCA. For example, among other things, the FCA provides that: (1) the relator must serve the complaint and a written disclosure of material evidence on the United States before service to the defendant; (2) the relator must file the complaint under seal while the government conducts an investigation; (3) the government may intervene if it so elects; (4) the government may settle the case over the objections of the relator; and (5) the government must give consent before the case can be dismissed. 31 U.S.C. § 3730(b)–(f); *see also United Seniors*, 500 F.3d at 25 n.8. Those procedural safeguards exist to ensure that the government — and in particular the executive branch — retains some control of a *qui tam* action and can determine the extent to which it will participate. *United Seniors*, 500 F.3d at 25 (citing *Manning v. Utils Mut. Ins. Co.*, 254 F.3d 387, 394 (2d Cir. 2001)); *see also United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994) (In a *qui tam* suit, "the government may take complete control of the case if it wishes."). None of these procedural safeguards are present in the MSP, and the statute's provision creating a private right of action contains no hint of any intent that the United States — and not the private plaintiff — is the real party in interest in an action brought under that provision. *See United Seniors*, 500 F.3d at 25.

Third, the MSP does not contemplate that the plaintiff share a monetary judgment with the government. The FCA explicitly limits the private plaintiff's percentage of the money recovered, with the government receiving the lion's share. *See e.g.* 31 U.S.C. § 3730(d)(1), (2) (providing that an FCA relator receive not more than 25% of the bounty in a government-prosecuted case, and 25-30% of the bounty in a case the government declines to prosecute); *United Seniors*, 500 F.3d at 25; s*ee also Vt. Agency*, 529 U.S. at 777, n.6 (summarizing history of *qui tam* statutes' division of bounty). The MSP, however, authorizes the private plaintiff to recover the entire bounty, 42 U.S.C. § 1395y (b)(3)(A), although explicitly authorizing the United States to file its own action for the same damages for which the private plaintiff may sue. 42 U.S.C. § 1395y(b)(2)(B)(iii). There is no mention of percentages or a requirement that the private plaintiff share the bounty with the government. *United Seniors*, 500 F.3d at 25. Finally, even if the statute could be read to create a right of subrogation in the government to the rights of the private plaintiff, *see id.* (suggesting that the government might have such a right pursuant to MSP § 1395y(b)(2)(B) (iii) or (iv)), such a right would hardly be consonant with the purpose of a *qui tam* statute, which is to provide for an action that will benefit the government as well as the private plaintiff. If the government receives no direct benefit from the lawsuit, it is disingenuous to claim that the suit is brought for the government's benefit and on its behalf.

Lastly, Stalley presents no evidence, whether from the legislative history or otherwise, that Congress intended the MSP to be a *qui tam* statute. The fact that Congress explicitly created the current *qui tam* provisions of the FCA the same month it created the private right of action in the MSP certainly belies Stalley's contention. If Congress had intended to transform the MSP into a *qui tam* statute it could have done so explicitly. But Congress did not do so.

Stalley has presented this same argument before several different tribunals, all of which have held that the MSP is not a *qui tam* statute and that Stalley does not have standing to sue on behalf of the United States. In fact, at oral argument Stalley's counsel admitted that no case — not even

in a concurrence or dissent — supports the proposition that the MSP is a *qui tam* statute. When pressed, counsel could not point to so much as a law review article in support of Stalley's position.

We now join all of the other courts that have ruled on the issue and hold that the MSP's private right of action provision does not transform the MSP into a *qui tam* statute. Because we find that the MSP is not a *qui tam* statute, we conclude that Stalley does not have Article III standing to assert his claims. Therefore, we need not decide the issue of whether Stalley's complaints stated claims upon which relief can be granted.

## B. Sanctions are appropriate against Stalley and his counsel.

Rather than acting as a private attorney general to benefit the United States, Stalley proceeds in these cases as a "self-appointed bounty hunter," *see Stalley v. Sumner Regional Health Systems, Inc.*, No. 06-0074, 2007 U.S. Dist. LEXIS 4912, at *2 (M.D. Tenn. Jan. 18, 2007), whose goal, apparently, is to profit at the expense of Appellees. As counsel admitted at oral argument, not even so much as a law review article, much less a case, supports Stalley's claim that the MSP is a *qui tam* statute, while numerous cases explicitly hold to the contrary. Stalley cannot point to even a passing reference in the legislative history of the MSP to bolster his position. He has literally no support whatsoever for his argument. Moreover, Stalley — along with his partner in litigation, Erin Brockovich — has made the exact same claims numerous times in other jurisdictions and been unanimously turned away.[4] Stalley's claims before this court are utterly frivolous, and we are troubled that any attorney would elect to advance them.

We have the inherent power to punish with sanctions those who litigate in bad faith. *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir. 1986) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)). These powers come not from rule or statute but from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). Our inherent powers include the ability to "fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44. Furthermore, we also have statutory authority to assess costs and attorney's fees against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. A "court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45-46 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975)). Before awarding attorney's fees to the prevailing party under the "bad faith exception," we must find that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (internal citations omitted). Our inherent power is not limited to sanctioning attorneys only; we can sanction a party as well. *See Chambers*, 501 U.S. at 48. While we should exercise this power with restraint and discretion, *id.* at 44, we should not shrink from exercising it when sanctions are justified by the circumstances.

Without question, Stalley and his attorneys know that he has no standing to raise the claims he asserts against the Appellees. Stalley cited no legal authority for his contention that the MSP is a *qui tam* statute, and he has failed to persuade a single one of the many other courts in which he has raised this claim. He cannot claim that he is arguing for a good-faith extension of the law, because Congress must explicitly create *qui tam* statutes. *See United Seniors*, 500 F.3d 23-24 ("There is

---

[4]We note from Appellee Methodist's brief, for example, the existence of no less than 18 district court cases, filed by either Stalley or Brockovich, rejecting the legal claims herein asserted.

presently no common-law right to bring a *qui tam* action, which is strictly the creature of statute."). We have no power to create a *qui tam* cause of action where none exists. Therefore, we can come to only one conclusion: Stalley and his attorneys have continued to pursue these claims against Appellees for an improper purpose.

We may not assess attorney's fees "without fair notice and an opportunity for a hearing on the record." *Roadway Express*, 447 U.S. at 767. Although a full evidentiary hearing is not required before we may impose sanctions, we must provide Stalley and his attorney's the opportunity to be heard. *Cook v. American S.S. Co.*, 134 F.3d 771, 774-75 (6th Cir. 1998). Accordingly, we will enter an order, contemporaneously with our filing of this opinion, instructing Stalley and his counsel to show cause why we should not impose sanctions, in the form of attorneys fees or costs or both, against Stalley and his attorneys for prosecuting these unreasonable and vexatious appeals.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgments of the district courts dismissing these complaints for lack of standing.