**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0529n.06

**No. 11-2176**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*May 30, 2013*
DEBORAH S. HUNT, Clerk

RASINS LANDSCAPE & ASSOCIATES, INC., )
)
    Plaintiff-Appellant, )
)
v. )   ON APPEAL FROM THE UNITED
)   STATES DISTRICT COURT FOR
)   THE EASTERN DISTRICT OF
MICHIGAN DEPARTMENT OF )   MICHIGAN
TRANSPORTATION, )
)
    Defendant-Appellee. )

Before: MARTIN and BOGGS, Circuit Judges; COLLIER, District Judge.[*]

**BOYCE F. MARTIN, JR., Circuit Judge.** Rasins Landscape & Associates, Inc., a subcontractor, sued the Michigan Department of Transportation because fourteen prime contractors failed to pay Rasins for work completed on projects for the Department. The district court dismissed Rasins's claims on the grounds that Rasins did not have standing to bring suit against the Department. Rasins appeals the district court's judgment, and for the following reasons, we AFFIRM.

I.

The Department receives federal funding for road and highway improvements from the Federal Highway Administration. In compliance with the Highway Administration's regulations,

---

[*] The Honorable Curtis L. Collier, United States District Court Judge for the Eastern District of Tennessee, sitting by designation.

the Department encourages prime contractors who bid on projects to hire a certain number of Disadvantaged Business Entity subcontractors. The Department also requires that prime contractors enter into a contract with the Department that mandates compliance with 23 U.S.C. § 324, which prohibits discrimination on the basis of sex, and that prime contractors post bond for payments owed to subcontractors by obtaining a surety to guarantee such payments.

Pursuant to 49 C.F.R. § 26.29(a), the "prompt payment" provision, the Department requires that prime contractors pay subcontractors for satisfactory performance within ten days from the date that the prime contractor receives payment from the Department. In compliance with 49 C.F.R. § 26.29(d), the Department provides means to enforce the prompt-payment requirement. The Department may sanction prime contractors for non-compliance through the "withholding of estimates on projects where prompt-payment violations are confirmed; reduction of prequalification ratings; and/or withdrawal of bidding privileges." In addition, the subcontractor may submit a lien claim to the Department's Contract Services Division to notify the project surety of a non-payment issue.

Rasins, a company majority-owned and operated by Christina Rasins, provided landscaping services for large-scale projects. Christina applied for and received certification as a Disadvantaged Business Entity. A number of prime contractors awarded Rasins subcontracts to perform landscaping work on major road-construction projects for the Department. Although Rasins duly completed the projects, several of the prime contractors failed to pay Rasins. In sum, fourteen different prime contractors owed Rasins approximately $491,160.76.

After repeatedly making payment demands on the prime contractors, Rasins informed the Department of the prime contractors' failure to pay and demanded that it force payment. Further, Rasins filed a complaint with the Department alleging that the prime contractors' failure to pay amounted to a violation of the Department's regulations and of gender-discrimination laws. Subsequently, the Department held a hearing and found the prime contractors liable to Rasins for payments due, but the Department did not ultimately sanction them or enforce payment. Rasins did not pursue legal action against either the prime contractors or the sureties.

In the end, Rasins never received the $491,160.76 owed to it and is in the process of dissolving. Rasins filed suit in United States District Court, alleging, among other things, that the Department violated 23 U.S.C. § 234 by discriminating against Rasins on the basis of Christina Rasins's gender and by engaging in retaliatory conduct. Rasins complained that the Department failed to use the enforcement mechanisms at its disposal. Additionally, Rasins alleged that the Department colluded with the prime contractors to avoid payment and instructed one prime contractor to file a lawsuit against Rasins to prevent suspension of the prime contractor's bidding rights. The Department moved to dismiss the claims, and after a hearing on the motion, the district court found that it lacked subject-matter jurisdiction over Rasins's claims because Rasins did not have standing. Accordingly, it granted the Department's motion to dismiss.

II.

We review de novo a district court's dismissal of a case under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008).

III.

As a threshold matter, the Department does not have the power to perform two of the actions that Rasins demands: forcing prime contractors to pay Rasins and forcing sureties to pay Rasins. First, the Department has stated, both at trial and on appeal, that it has no mechanism in place to directly compel prime contractors to pay subcontractors, an assertion that the district court accepted and that Rasins does not appear to contest on appeal. Second, the Department does not have the power to force the project sureties to pay Rasins. While the Department must require prime contractors to post bond by obtaining a surety to guarantee payments to subcontractors, *see* Mich. Comp. Laws § 570.101, an unpaid subcontractor's remedy is to sue the surety, not to request that the Department compel the surety to pay, *see* Mich. Comp. Laws § 570.104. Rasins failed to exercise its opportunity to seek payment from the sureties. A subcontractor may submit a lien claim to the Department in order to notify the project surety of non-payment, but the surety is the party that must ensure that all payments are made and that must be sued if a dispute arises.

Thus, the question that remains is whether Rasins had standing to demand that the Department use the remaining methods at its disposal—withholding future payments and restricting eligibility to bid on future projects—to sanction the prime contractors.

IV.

The Supreme Court has stated that "the irreducible constitutional minimum of standing contains three elements": (1) an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted).

Moreover, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. The Department does not dispute that Rasins has an injury in fact—its unpaid fees in the amount of $491,176.60. The case turns on elements (2) and (3) of the standing analysis—whether the Department was the cause of Rasins's injury and whether the relief that Rasins seeks will redress that injury.

With regard to causation, the Supreme Court has elaborated that the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* at 560 (alteration in original) (internal quotation marks omitted). Rasins's injury is not fairly traceable to the Department. The prime contractors caused Rasins's injury when they refused to pay Rasins and thus the injury is the result of an independent action of some third party not before the court. In fact, the Department's actions about which Rasins now complains—failing to sanction the prime contractors—occurred well after the prime contractors inflicted Rasins's injury. In effect, Rasins's allegations do not show that the Department caused its injury; rather, they show that after third parties injured Rasins, the Department failed to order those that truly caused Rasins's injury to make recompense.

This case presents an unfortunate set of circumstances, but Rasins has sued the wrong party, bringing before the court a government entity whose failure to enforce its regulations did not cause Rasins's injury. *See Allen v. Wright*, 468 U.S. 737, 757–59 (1984) (finding no causation of plaintiffs' injury—their children's diminished ability to receive an education in a racially integrated school—when the IRS failed to deny tax-exempt status to racially segregated private schools); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44–45 (1976) (finding no causation of plaintiffs'

injury—fewer hospitals for indigents—when the IRS allowed favorable tax treatment to a nonprofit hospital that offered only emergency-room service to indigents). To permit Rasins's error to create jurisdiction seems especially unnecessary given that all Rasins needed to do to recoup its money was to sue the project surety. It is unclear why Rasins, rather than going after the parties that actually injured it—or the sureties insuring them—has chosen to blame the Department for its losses. As the *Allen* court put it, "[t]he links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain [Rasins's] standing." *Allen*, 468 U.S. at 759.

While the inquiry could end here, it is also worth noting that Rasins has not established the third element required for standing—redressability. The Supreme Court has stated that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). The Supreme Court has also noted that when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," a likelihood of redressability is "substantially more difficult to establish," as it "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id*. at 562 (internal quotation marks omitted).

In this case, Rasins bears the burden of demonstrating that it is likely, rather than merely speculative, that a court ordering the Department to issue sanctions would redress Rasins's injury and result in the collection of the money owed. Rasins's only attempt at a redressability argument is the conclusory statement that "[o]nly a willfully irrational prime contractor would withhold

payments in the face of [the Department's] sanctions." Other than this unsupported statement, Rasins offers no evidence to demonstrate that a prime contractor would likely pay its debts rather than suffer sanctions.

Rasins has failed to develop a record that supports its claims, as it is unclear that a prime contractor would pay its debts even if sanctioned. Some of the debtor-contractors owe large sums of money to Rasins and thus payment to Raisin may cost more than the threatened sanctions. Some may no longer be solvent or in business. Some may have already received all payments owed to them by the Department such that the Department's threat to withhold future payments would not prompt payment. And some may not anticipate bidding on future Michigan government contracts such that the Department's revocation of bidding privileges would similarly fail to compel payment. However unfortunate Rasins's circumstances may be, what is clear is that we cannot make a determination that it is likely, rather than merely speculative, that a favorable decision from this court will redress Rasins's injuries. In sum, Rasins has failed to carry its burden of proving redressability.

For the foregoing reasons, we AFFIRM the judgment of the district court.