ESTATE OF Clinton MCDONALD,
Plaintiff

v.

INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, Defendant

CIVIL ACTION NO. 3:12CV–577–CRS

United States District Court,
W.D. Kentucky,
at Louisville.

Signed April 8, 2015

Filed April 14, 2015

Linda R. Magruder, Louisville, KY, for Plaintiff.

Allison W. Weyand, Tanya Y. Bowman, Frost Brown Todd LLC, Louisville, KY, for Defendant.

### MEMORANDUM OPINION AND ORDER

Charles R. Simpson III, Senior Judge, United States District Court

This matter is before the court on motion of the defendant, Indemnity Insurance Company of North America ("Indemnity"), to alter or amend the court's August 28, 2014 Memorandum Opinion (DN 34) and Order and Judgment (DN 35), pursuant to Fed. R. Civ. P. 59.

For purposes of continuity, the court will recite the basic facts and procedural history of the action.[1]

Plaintiff Estate of Clinton McDonald (the "Estate") brought this action pursuant to the "private cause of action" provision of the Medicare Secondary Payer Act ("MSPA"). 42 U.S.C. § 1395y(b)(3)(A). The court initially denied a motion by Indemnity to dismiss for failure to state a claim (DN 14) and a motion by the Estate for summary judgment (DN 16). In so doing, the court indicated that its reading of the case of *Bio–Medical Applications of Tennessee, Inc. v. Central States Southeast and Southwest Areas Health and Welfare Fund,* 656 F.3d 277 (6th Cir.2011) compelled the conclusion that the Estate could not maintain a cause of action against Indemnity under the MSPA. However, as neither party had directly addressed the various inconsistencies in the statute and *Bio–Medical's* interpretation of the those provisions, the court declined to enter judgment in either party's favor, and af-

forded the parties an opportunity to address the court's analysis in light of the *Bio–Medical* case.

The parties then filed cross-motions for summary judgment. ( DNs 27; 28). After briefing was completed, the United States Court of Appeals for the Sixth Circuit decided *Michigan Spine and Brain Surgeons, PLLC v. State Farm Mutual Automobile Insurance Company,* 758 F.3d 787 (6th Cir.2014). The Estate filed a notice of the issuance of the *Michigan Spine* decision, noting that the case was directly on point supporting the Estate's position that it had a viable cause of action. Indemnity did not comment on this new authority. For the reasons set forth in a second Memorandum Opinion (DN 34), the court concluded that *Michigan Spine* controlled in this case, and that the Estate was entitled to summary judgment against Indemnity for $184,514.24.00, a "double damage" award under § 1395y(b)(3)(A).[2]

### I.

Clinton McDonald ("McDonald") was employed by O'Reilly Auto Parts ("O'Reilly"). Indemnity was the workers' compensation insurance carrier for O'Reilly. On May 10, 2007, McDonald was in a motor vehicle accident while acting within the course and scope of his duties as an employee of O'Reilly. McDonald suffered severe injuries as a result of the accident. On November 5, 2007, he passed away. At the time of the accident, McDonald was a Medicare recipient. Medicare paid in excess of $180,000.00 in medical costs on behalf of McDonald between the accident and his death.

O'Reilly disputed whether McDonald's death was caused by the work-related acci-

---

1. Much of this material is taken from the court's earlier opinions. (DNs 21, 34).

2. Section 1395y(b)(3)(A) is discussed in Section II. A. of this opinion.

dent. On December 28, 2009, the Kentucky Workers' Compensation Board found that McDonald's death was caused by the accident. The Workers' Compensation Board ordered O'Reilly or its workers' compensation insurance carrier to pay for McDonald's medical expenses. After the Estate moved to reconsider portions of the Workers' Compensation Board Opinion and Order, the Workers' Compensation Board issued a second Order amending its decision, but not as to its conclusion that O'Reilly or its workers' compensation insurance carrier was required to pay McDonald's medical expenses. (03/09/10 Order).

On September 13, 2012, the Estate filed suit against Indemnity alleging that Indemnity had not reimbursed Medicare for the conditional payments of McDonald's medical costs. The Estate alleged that, under the private cause of action provision of the MSPA, it was entitled to recover double the sum of the conditional payments owed to Medicare which remained unpaid at the time of the filing of the action.

After the Estate filed its complaint, Indemnity received a Conditional Payment Letter from the Medicare Secondary Payer Recovery Contractor ("Medicare") that was dated September 18, 2012.[3] That Conditional Payment Letter stated that Medicare had made $181,326.38 in conditional payments for McDonald's healthcare. As is customary, the letter requested that Indemnity "refrain from sending any monies to Medicare prior to submission of settlement information and receipt of a demand/recovery calculation letter from [Medicare's] office ..." On October 25, 2012, Medicare issued Indemnity a "Fi-

nal Demand Letter" asking that Indemnity pay $184,514.24. On December 11, 2012, Indemnity issued a check to Medicare for $184,514.24. A January 11, 2013 letter from Medicare acknowledged receipt of the check and stated that the amount due had been reduced to zero.

## II.

### A.

Medicare is a federal government health insurance program that provides benefits to individuals that are 65 years of age or older, disabled, or have end-stage renal disease. 42 U.S.C. § 1395c. Although Medicare was at one time the primary payer of health costs for eligible individuals, escalating health care costs led Congress to enact the MSPA. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915 (6th Cir.2008). The MSPA "designates certain private entities—such as a group health plan, a workers' compensation plan, or an automobile or liability insurance plan—as 'primary payers' that have the responsibility to pay for a person's medical treatment." *Id.* Medicare thus does not have to pay if payment for covered medical services has been or is reasonably expected to be made by a primary payer. *See id.*; 42 U.S.C. § 1395y(b)(2)(A). However, "[i]f the primary payer has not paid and will not promptly do so," Medicare is empowered to "conditionally pay the cost of the treatment." *Stalley*, 517 F.3d at 915; *see* 42 U.S.C. § 1395y(b)(2)(B)(i). Medicare may then seek reimbursement for any conditional medical payments from the primary payer. *Stalley*, 517 F.3d at 915; 42 U.S.C. § 1395y(b)(2)(B)(iii).

---

**3.** A number of other events occurred between the issuance of the Workers' Compensation Board decision ordering payment of McDonald's medical expenses and the September 18, 2012 Conditional Payment Letter. Those additional events are the subject of Indemnity's motion to alter or amend, and will be addressed later in this opinion.

■ In addition, "[t]he MSPA also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights." *Stalley*, 517 F.3d at 916 (quoting *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1307 (11th Cir.2006) (citing 42 U.S.C. § 1395y(b)(3)(A))). The private cause of action provision states, "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3)(A). Paragraph (1) imposes certain requirements on group health plans, including, *inter alia*, prohibiting them from taking into account whether an individual covered by the plan is entitled to Medicare benefits. *See Bio-Medical*, 656 F.3d at 285. Paragraph (2)(A) states that Medicare "may not pay when a primary plan is reasonably expected to pay under paragraph (1), 'except as provided in subparagraph (2)(B).'" *Id.* In turn, subparagraph (2)(B) provides that Medicare may make conditional payments for items and services when the primary plan "'cannot reasonably be expected' to pay 'promptly.'" *Id.* In *Stalley v. Catholic Health Initiatives*, the Eighth Circuit discussed the purpose of the private cause of action provision:

> Courts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers.... The thinking behind the statute is apparently that (1) the beneficiary can be expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts.

509 F.3d 517, 524–525 (8th Cir.2007) (internal citations omitted). While the purpose for the private right of action provision appears clear, application of the statute's requirements to various claims is not so easily discerned.

The Estate contended that it was entitled to summary judgment because its complaint spurred Indemnity to pay Medicare, and that its suit accomplished what the MSPA private cause of action was meant to accomplish—an errant workers' compensation carrier has now paid Medicare what it owed Medicare for the past two years. DN 28–1, p. 12. Indemnity initially denied the claim, as O'Reilly disputed that McDonald's death was caused by a work-related accident. After the Workers' Compensation Board concluded that McDonald's death was caused by the accident and ordered O'Reilly or its carrier to pay McDonald's medical expenses, Indemnity did not notify or seek to reimburse Medicare. It did reimburse Medicare in full within sixty days of its receipt of Medicare's request for payment. However, this occurred after McDonald filed this lawsuit.

This court found that the Estate had a viable cause of action against Indemnity under § 1395y(b)(3)(A) under the holding in *Michigan Spine, supra*. In addressing cross-motions for summary judgment, the court also rejected Indemnity's fallback position that since it paid according to

instructions following receipt of the September 18, 2012 Conditional Payment Letter and Final Demand Letter from Medicare, it did not fail to provide appropriate reimbursement as set forth in 42 U.S.C. § 1395y(b)(3)(A). (DN 27-1, pp. 9–10). The court found that such a ruling would be contrary to the language of the private cause of action provision.

The private cause of action provision allows for damages "in an amount double the amount otherwise provided"—the purpose being to encourage beneficiaries to bring claims even if Medicare has already paid the beneficiaries' expenses. Once a private cause of action claim has been lodged against a defendant, a defendant cannot escape the double damages provided for in that provision by paying single damages to Medicare. The court noted that Indemnity's "no harm; no foul" argument disregarded the two years between the order for payment by Workers' Compensation Board and the filing of this suit during which Indemnity did nothing to notify or reimburse Medicare. The court concluded that the Estate's filing of the suit prompted payment to Medicare in the amount of $184, 514. 24. Therefore, the court held that the Estate was entitled to the double damage amount "to reward it for its efforts." 509 F.3d at 525.

### B.

■ Indemnity filed a timely Fed. R. Civ. P. 59 motion to alter or amend, seeking to vacate the final judgment in this matter. The court may grant such a motion "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. American Int'l, Underwriters*, 178 F.3d 804, 834 (6th Cir.1999)(internal citations omitted). Indemnity urges the court to vacate the final judgment to prevent manifest injustice.

Indemnity has provided two affidavits and a number of documents which purport to show that Indemnity's representative, Gould and Lamb, sought a Final Demand Letter from Medicare to establish the amount outstanding for reimbursement, and provided Medicare the Workers Compensation Opinion and Order with that request. The request was made prior to the filing of this action. Indemnity contends that, but for the court's precipitous entry of final judgment, this evidence would have been developed in discovery and offered to defend against the Estate's claim that the filing of the lawsuit induced Indemnity to reimburse Medicare.

Indemnity argues that the court should have limited its summary judgment decision to the question whether Indemnity, a workers' compensation carrier, was amenable to suit. It contends that the court should thereafter have allowed discovery concerning Indemnity's actions during the three-year period between the workers' compensation decision and the filing of the lawsuit by the Estate to flesh out the issue of appropriate reimbursement after finding that the Estate had a viable claim against Indemnity. It further contends that the court relied upon mistaken factual assumptions in finding that the Estate was entitled to a double damage award because the record had not yet been developed.

The parties submitted an agreed order and briefing schedule which stayed the Rule 16 scheduling conference and any required mediation. (DN 26). Nothing in that order or in the memorandum opinion and order giving rise to the second round of cross-motions for summary judgment (DN 21) suggested that the briefs were to be constrained solely to the question of the viability of a § 1395y(b)(3)(A) claim against Indemnity, and in fact, each side argued that no genuine issue of material fact existed to preclude judgment in its favor. The

Estate has repeatedly sought judgment in the amount of $184,514.24 pursuant to § 1395y(b)(3)(A) on the ground that Indemnity did not make appropriate reimbursement to Medicare until after it was spurred to do so by the filing of this lawsuit. (DNs 16–6; 28–3). Indemnity premised its bid for summary judgment not only on the theory that the statute did not contemplate suit against a workers' compensation carrier, but also on the ground that Indemnity paid the amount owed in full upon receiving the September 18, 2012 Final Demand Letter, constituting appropriate reimbursement to Medicare, and thus the Estate should have no recovery under the statute.

In our first opinion, this court looked to the purpose of the statute and rejected Indemnity's argument:

> As to Indemnity's argument that its payment to Medicare rendered this case moot, such a holding would be contrary to the language of the private cause of action provision. The private cause of action provision allows for damages "in an amount double the amount otherwise provided" -- the purpose being to encourage beneficiaries to bring claims even if Medicare has already paid the beneficiaries' expenses. Once a private cause of action claim has been lodged against a defendant, a defendant cannot escape the double damages provided for in that provision by paying single damages to Medicare.

DN 21, pp. 7–8.

In the subsequent decision which Indemnity is presently seeking to alter or amend, the court reaffirmed the above-quoted language, stating that "The court has been offered no reason to question this conclusion [that the Estate is entitled to a double damage award]. Indemnity's 'no harm; no foul' argument disregards the two years between the order for payment by O'Reilly or its carrier from the Workers' Compensation Board and the filing of this suit during which Indemnity did nothing to notify or reimburse Medicare." DN 34, pp. 8–9. In fact, this finding appears to be contradicted by evidence now offered by Indemnity. The documents indicate that, at the very least, Gould & Lamb, the medical financial services company handling McDonald's workers' compensation claim, sent a letter to Medicare on September 30, 2011 requesting that a Final Demand letter issue. (DN 36–10).

■ Upon review, it appears that Indemnity's offer of evidence suggests that this court's impression that Indemnity had done nothing to appropriately reimburse Medicare until prompted to do so by this suit may have been misinformed. As such, a failure to permit the issue to be fully developed may result in a miscarriage of justice. The parties will be permitted to develop the underlying facts and present fulsome argument on the question of appropriate reimbursement and the Estate's entitled to a damage award, if any.

Therefore, motion having been made and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that

(1) The motion of the defendant, Indemnity Insurance Company of North America, to alter or amend the court's August 28, 2014 Memorandum Opinion and Order and Judgment (DN 36) is **GRANTED.**

(2) The Memorandum Opinion (DN 34) is **AMENDED to delete the last paragraph of page 8 through the end of the August 28, 2014 Memorandum Opinion. In its place, the text shall read that "The motion of the plaintiff, Estate of McDonald, for summary judgment is thus GRANTED IN PART AND DENIED IN PART. The motion of the defendant, Indemnity Insurance Company**

of North America, is **DENIED. IT IS SO ORDERED.**"

(3) The Order and Judgment (DN 35) is **AMENDED to delete numerical paragraph 3. Numerical paragraph 2 is AMENDED to state that summary judgment in favor of the Estate is "GRANTED IN PART AND DENIED IN PART."**

(4) This matter is **REFERRED** to United States Magistrate Judge Colin H. Lindsay to conduct a Fed. R. Civ. P. 16 scheduling conference.

**IT IS SO ORDERED.**