**AERO–MOTIVE COMPANY, Plaintiff,**

v.

**GREAT AMERICAN INSURANCE, f/k/a American National Fire Insurance Company, Defendant.**

**No. 1:03–CV–55.**

United States District Court, W.D. Michigan, Southern Division.

Nov. 7, 2003.

Matthew B. Eugster, Grand Rapids, MI, for Plaintiff.

Richard J. Gianino, Bloomfield Hills, MI, for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff, Aero–Motive Company ("Aero–Motive"), claims that Defendant, Great

American Insurance ("Great American"), must defend and indemnify Aero–Motive for environmental property damage under a commercial general liability insurance policy (the "Policy"). Great American moved for summary judgment on the limited issue of whether coverage is excluded under the Policy's "sudden and accidental" pollution exclusion clause. Following a hearing, the Court issued an Opinion and Order on August 11, 2003, granting Great American's motion with respect to Aero–Motive's claims regarding fires in the disposal pit, the degreaser, and the factory addition, and denying Great American's motion with respect to Aero–Motive's claim regarding the underground storage tank. The Court also temporarily denied Great American's motion with respect to Aero–Motive's claim regarding dumping in the disposal pit, permitting the parties to file additional briefs and materials addressing whether the disposal pit was "state of the art" at the time the dumping occurred.

Now before the Court are: (1) the parties' supplemental briefs and materials regarding whether the disposal pit was "state of the art" such that the Policy's "sudden and accidental" clause applies; (2) Aero–Motive's motion for reconsideration of the Court's Order to the extent that it granted in part Great American's motion for summary judgment; and (3) Aero–Motive's renewed request for partial summary judgment on Great American's duty to defend as to all environmental claims at issue. The Court will grant summary judgment for Great American on the issue of whether the releases from the disposal pit were "sudden and accidental"; affirm the Order of August 11, 2003, insofar as it granted summary judgment for Great American with respect to fires in the disposal pit, the degreaser, and the factory addition; and deny Aero–Motive's request for summary judgment on its duty to defend claims.

## I. Standard of Review—Motion for Reconsideration

To prevail on a motion for reconsideration, the movant must "not only demonstrate a palpable defect by which the Court and the parties have been misled, but [must] also show that a different disposition of the case must result from a correction thereof." LCivR 7.4(a). Moreover, a motion for reconsideration may not be used to raise issues that could have been raised in the previous motion, *see Kohl v. Murphy*, 767 F.Supp. 895, 904 (N.D.Ill.1991), or to introduce evidence which could have been proffered during the pendency of a summary judgment motion, *see Thomas Indus., Inc. v. Wagner Spray Tech Corp.*, 619 F.Supp. 1280, 1284 (E.D.Wis.1985); *Indep. Petroleum Ass'n of Am. v. Babbitt*, 178 F.R.D. 323, 327 (D.D.C.1998).

## II. Standard of Review— Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (cit-

ing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### III. *Discussion*

**A. Application of the "sudden and accidental" clause to the disposal pit.**

 The Policy contains a "sudden and accidental" pollution exclusion clause, which provides as follows:

This insurance does not apply:

. . . . .

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*

(Policy at GA081, § I, Exclusions (f) (emphasis added).) Aero–Motive claims that the release of waste material from the disposal pit was "sudden and accidental" because the disposal pit was operated in a manner consistent with the generally-accepted industrial waste disposal practices of the time (i.e., it was state of the art) and no one was aware it would leak. Accordingly, argues Aero–Motive, the Policy's "sudden and accidental" pollution exclusion clause applies and the insurance policy covers the release, so the Court should deny Great American summary judgment regarding materials released from the disposal pit.

The proper standard of review to be applied here is that stated by the Sixth Circuit in *Employers Insurance of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 103 (6th Cir.1995); i.e., whether drawing all justifiable inferences in its favor, Aero–Motive has presented evidence upon which a reasonable jury could find that some damage at the subject site could be the result of "sudden and accidental" discharges, releases, dispersals, or escapes as those terms have been defined under Michigan law. *See Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 10 F.Supp.2d 771, 776–77 (E.D.Mich.1998).

The Court noted in its August 11, 2003, Opinion that Michigan courts have deemed discharges from waste disposal sites that were state of the art at the time the pollutant was placed into the site to be "accidental." *See, e.g., Kent County v. Home Ins. Co.*, 217 Mich.App. 250, 270–72, 551 N.W.2d 424, 433 (1996), *vacated in part*, 456 Mich. 858, 568 N.W.2d 671 (1997). Factors indicating whether a facility was state of the art for its time include whether: (1) the facility was licensed by state or federal agencies; (2) it complied with state or federal guidelines; and (3) the design was the product of engineering

studies that concluded that the design was effective to contain the contaminant. *Id.* at 269–70, 551 N.W.2d at 433. These factors tend to show whether the polluter originally acted in good faith in placing the waste into the container. *Id.*

In its Opinion, the Court stated that it was unable to determine whether the release of materials that had been dumped into the disposal pit was accidental, because neither party had presented evidence regarding whether the waste disposal pit was appropriately licensed, whether it was state of the art, or whether anyone was aware that the disposal pit would leak at the time it was in use.[1] The Court therefore temporarily denied Great American's motion with respect to materials dumped into the disposal pit. The parties were told to file additional briefs and materials addressing whether any of the *Kent County* factors discussed above were satisfied at the time the pollutants were originally dumped into the disposal pit.

Aero–Motive now acknowledges that the disposal pit was not a state of the art *landfill* under the three factors set forth in *Kent County.* First, the disposal pit was not licensed by state or federal authorities. Second, the disposal pit did not comply with state or federal regulatory guidelines. In fact, such licensing and engineering regulations did not even exist at the time the disposal pit was excavated and used. Third, no engineering studies were conducted prior to the disposal pit's construction. However, Aero–Motive contends that the *Kent County* factors do not provide an appropriate standard for determining whether the disposal pit was state of the art, because the *Kent County* court applied those factors to determine whether a *landfill* was state of the art. As Aero–Motive points out, the disposal pit at issue here was *not a landfill;* it was just a disposal pit. Thus, the *Kent County* factors for evaluating landfills should not be used to evaluate whether the disposal pit in this case was state of the art. Instead, Aero–Motive suggests that whether the disposal pit was state of the art turns on the question of whether its operation was consistent with generally-accepted waste disposal practices at the time. Aero–Motive argues that its operation was so consistent.

The Court agrees that *Kent County* had to do with a regulated landfill, and thus does not fit neatly with the facts of this case.[2] The determination of whether the

---

**1.** The Court recognizes that its Opinion of August 11, 2003, discussed but did not decide whether the releases of waste material from the disposal pit were "sudden."

**2.** It must also be pointed out that in *Kent County,* some of the insurance policies contained "sudden and accidental" language, while others contained "neither expected nor intended" language. At the outset of its opinion, the *Kent County* court determined that the "sudden and accidental" clauses were not triggered because "there was no evidence that either plaintiff's initial placement of municipal waste in the landfill or the subsequent contamination of the groundwater had the temporal element required, i.e., was immediate, abrupt, or occurred quickly. Thus, the trial court did not err in concluding [defendant] Great American had no duty to defend or indemnify plaintiff and properly granted summary disposition to Great American." 217 Mich.App. at 264, 551 N.W.2d at 430. The *Kent County* opinion went on to address only those policies with "neither expected nor intended" language, which limits the usefulness of *Kent County* to the analysis in the present case. The Michigan Supreme Court vacated the portion of the *Kent County* decision holding that the "sudden and accidental" exception was not triggered. *See County of Kent v. Home Ins. Co.,* 456 Mich. 858, 568 N.W.2d 671 (1997). The Supreme Court remanded the case to the trial court for determination of whether the discharges from the landfill into the environment were "sudden and accidental" because it found that the trial court did not reach the issue. How the trial court resolved the matter on remand is unknown.

"sudden or accidental" exclusion applies does not turn purely on whether the disposal pit was "state of the art" (although whether the disposal pit was designed and operated consistent with then-contemporary standards is relevant to deciding the "accidental" prong). Instead, the Court must start by answering the basic question of whether the release of pollutants from the pit was "sudden and accidental" according to the meaning of those terms under Michigan law. Although courts in various jurisdictions differ over the definitions of the terms "sudden and accidental," the Michigan Supreme Court has announced the terms' meanings in this state:

> We conclude that when considered in its plain and easily understood sense, "sudden" is defined with a "temporal element that joins together conceptually the immediate and the unexpected." *Star Fire Coals, supra* at 34. The common, everyday understanding of the term "sudden" is " 'happening, coming, made or done quickly, without warning or unexpectedly; abrupt.' " *FL Aerospace, supra* at 219. "Accidental" means "[o]ccurring unexpectedly and unintentionally; by chance." *The American Heritage Dictionary: Second College ed.*, p. 72. We, therefore, reject the definition of "sudden and accidental" as set forth by the Michigan Court of Appeals in *Jonesville*. Thus, we find that the terms "sudden" and "accidental" used in the pollution-exclusion clause are unambiguous.

*Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 207–208, 476 N.W.2d 392, 397–98 (1991).

The parties differ over what constituted the relevant releases for purposes of the "sudden and accidental" analysis. Great American argues that relevant releases occurred when employees dumped waste materials into the disposal pit; the disposal pit was not intended to contain the materials, so dumping waste into the pit in essence constituted dumping it directly into the environment. Aero–Motive argues that the disposal pit was intended to contain the materials, much like an actual landfill, so that the relevant releases occurred when the materials leaked out of the disposal pit and into the surrounding environment. The Court will assume for the sake of this analysis that Aero–Motive's understanding of what constituted the relevant releases is correct. Thus, assuming that although the disposal pit was not a licensed and regulated landfill, it was a contained area designed and used to hold the waste, the Court must determine whether the movement of the waste materials from the pit to the surrounding earth was "sudden and accidental." *See Kent County*, 217 Mich.App. at 288, 551 N.W.2d at 441 ("[A]pplication of the pollution exclusion requires that the court focus on the initial discharge into the environment.... If waste materials are placed in a contained area or structure and later escape into the environment, the latter discharge is the relevant discharge."); *South Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich.App. 635, 672, 572 N.W.2d 686, 703 (1997) (holding that the proper focus when applying the sudden and accidental exception to the pollution exclusion is on the discharge or release of contaminants from a landfill into the environment and not on the initial placement of waste in the landfill).

To be considered "sudden," the discharges from the disposal pit must have been identifiable, temporally isolated events rather than part of a gradual seepage process. In other words, for the "sudden" prong of the "sudden and accidental" exclusion to apply, Aero–Motive "must present evidence of isolated discharges 'apart from the overall continuous leaking' " of the disposal pit. *City of Albion v. Guar. Nat'l Ins. Co.*, 73 F.Supp.2d 846, 852 (W.D.Mich.1999) (quoting *South Macomb Disposal Auth. v. Am. Ins. Co.*, 225 Mich.

App. 635, 681, 572 N.W.2d 686, 707 (1997)). *See also Aetna Cas. & Surety Co. v. Dow Chem. Co.,* 10 F.Supp.2d 771, 778 (E.D.Mich.1998) (noting that "a blanket refusal [by an insured] to separate out evidence of discrete, isolated polluting events that are alleged to be sudden and accidental from allegations of overall polluting and a parade of horribles would expand the pollution exclusion and swallow the exception.").

Aero–Motive fails to show that the discharges of material from the disposal pit were "sudden" as that term is construed under Michigan law. The facts in this case are clear: employees dumped waste into the pit on a regular basis over the course of several years. Aero–Motive's assertion that each dumping incident comprised a "sudden" release of waste materials into the surrounding environment strains the meaning of the word in light of the fact that Aero–Motive argues the disposal pit was intended to hold the materials in place. What is more, if each instance of an employee dumping waste into the pit comprised a "sudden" release, then the releases could not have been accidental. Aero–Motive cannot escape this dilemma. *See, e.g., Traverse City Light & Power Bd. v. Home Ins. Co.,* 209 Mich.App. 112, 118–19, 530 N.W.2d 150, 153–54 (1995) (finding that the insured's regular discharge of fly ash directly into the environment was intentional and expected and therefore could not have been either "sudden" or "accidental" under the *Upjohn* definitions of those terms; to claim otherwise flies in the face of all reason, common sense, and experience). As waste materials accumulated in the pit, they gradually and continually leaked into the surrounding earth. Aero–Motive has provided no evidence of isolated discharges apart from this continual leakage pattern. There is no genuine issue of material fact as to whether the discharges of waste materials from the disposal pit were sudden; they were not.

■ The "sudden and accidental" clause is phrased in the conjunctive. If, as here, the releases were not sudden, it is not necessary to determine whether they were accidental. Summary judgment for Great American is therefore appropriate on the disposal pit matter.

**B. Aero–Motive's claim that there are genuine issues of material fact with respect to whether the overflow of the parts degreaser, fires in the disposal pit, and spills in the vicinity of the 1967 factory addition were the result of "sudden and accidental" releases.**

■ The Court's Opinion and Order of August 11, 2003, granted summary judgment in favor of Great American on the questions of whether the "sudden and accidental" pollution exclusion clause applies to the alleged overflow of the parts degreaser, fires in the disposal pit, and spills in the vicinity of the factory addition. The Court determined that Aero–Motive failed to adduce admissible evidence sufficient to create genuine issues of material fact as to whether these events were "sudden and accidental." Therefore, the Court granted summary judgment for Great American on these three matters. Aero–Motive now asks the Court to reconsider its ruling on these matters. For the reasons stated below, the Court affirms its ruling.

Regarding the alleged degreaser overflow, Aero–Motive contends that at least one overflow occurred, resulting in a "sudden and accidental" release of TCE into the subsurface soils adjacent to the drain pipe discharge located in the area of the degreaser machine. However, as the Court noted, Aero–Motive's only support for this assertion consists of hearsay statements from a former employee. (Kelly Dep. at 16–17, Pl.'s Resp. Br., Ex. C.) These statements do not create a genuine

issue of material fact to rebut Great American's motion. Accordingly, summary judgment in favor of Great American with regard to the degreaser was proper.

■ Regarding the alleged spills in the vicinity of the 1967 factory addition, Aero–Motive contends that the contamination found in that location may have been caused by spills, overflows, or other accidental events that could constitute "sudden and accidental" releases. However, Aero–Motive has offered no evidence such as deposition testimony or affidavits to support this conjecture and rebut Great American's motion. For this reason, the Court properly granted summary judgment in favor of Great American on the contamination in the vicinity of the 1967 factory addition.

■ Regarding the fires in the disposal pit, Aero–Motive contends that the incidents of spontaneous combustion may have caused "sudden and accidental" releases because the burning could have created additional, harmful chemical compounds through the process of pyrolysis, and also that firefighting efforts may have spread or exacerbated the previously disposed wastes. Aero–Motive has offered evidence that waste materials in the disposal pit spontaneously combusted on several occasions. However, the Court determined that Aero–Motive failed to offer any testimony regarding how the fires may have caused the waste materials from the disposal pit to be released into the environment. Moreover, the Court concluded that all fires after the first were foreseeable and thus could not have been accidental. The Court therefore granted summary judgment for Great American on the matter.

The Court will affirm its grant of summary judgment on the disposal pit fire issue. The pivotal question is not whether the fires were themselves "sudden and accidental," but rather whether the fires caused "sudden and accidental" releases of waste materials from the disposal pit into the surrounding environment. The fires may well have created new and additional chemical compounds through the pyrolysis process. But even if that was the case, Aero–Motive fails to explain how the fires could have caused pollutants to leave the disposal pit. Aero–Motive offers testimony that the fire department may have responded to the fires. Aero–Motive then goes on to suggest that the fire department may have used water to put out the fire, and that the water may have spread contaminants outside the pit. However, these suggestions are no more than speculation, unsupported by evidence, and therefore insufficient to withstand Great American's motion for summary judgment.

## C. Aero–Motive's objection to summary judgment based on production of claims file documents related to the Belvidere Landfill site.

Aero–Motive asks the Court to withhold summary judgment for Great American because certain yet-unreleased documents related to the Belvidere Landfill claims file may shed light on the parties' course of dealing and conduct pursuant to the Policy. Aero–Motive speculates that these documents may ultimately undermine Great American's arguments with respect to the Policy's coverage for environmental property damage. The Court rejects this objection to its summary judgment rulings. The conclusions reached in this Opinion and in the Opinion of August 11, 2003, are based on a straightforward application of the "sudden and accidental" pollution exclusion clause to the facts alleged. Aero–Motive has not indicated, and the Court cannot envision, how the Belvidere Landfill claims file documents could alter these conclusions.

### D. Aero–Motive's request for partial summary judgment on Great American's duty to defend as to all environmental claims.

In its response brief to Great American's motion for summary judgment, Aero–Motive posited that Great American breached its duty arising under the Policy to defend Aero–Motive on claims for environmental property damage. (Pl.'s Br. Resp. Def.'s Mot. Summ. J. at 22–25.) Although Aero–Motive's response brief was not captioned as a cross-motion for summary judgment, the brief closed by asking the Court to grant Aero–Motive partial summary judgment with respect to defense costs. Great American's reply brief did not discuss the defense costs issue. The Court did not address the issue of defense costs in its Opinion of August 11, 2003. Now Aero–Motive's Motion for Reconsideration renews the request for partial summary judgment with respect to defense costs. Great American has made no response to this request.

Aero–Motive's duty to defend claim invokes the following clause in the Policy:

II. DEFENSE, SETTLEMENT. The company shall have the right and duty to defend any suit against the insured seeking recovery for such resulting money damages even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigations and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability described in the schedule of this endorsement has been exhausted by payment of judgements or settlements. (Policy at GA084, Def.'s Br. Supp. Mot. Summ. J., Ex. A.)

■ It is a well-accepted principle of Michigan law that the duty to defend is broader than the duty to indemnify. *See*

*Auto–Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15, 521 N.W.2d 480, 487 (1994); *Polkow v. Citizens Ins. Co. of Am.*, 438 Mich. 174, 180, 476 N.W.2d 382, 384 (1991). An insurer's duty to provide a defense extends to allegations that even arguably may come within the policy coverage, and "any doubt pertaining to application of the duty to defend is to be resolved in favor of the insured." *Id.* Furthermore, an insurer's duty to defend continues until there has been sufficient factual development for a determination that the environmental property damage at issue was not the result of a "sudden and accidental" release:

Fairness requires that there be a duty to defend in environmental claims at least until there is sufficient factual development to determine what caused the pollution so that a determination can be made regarding whether the discharge was sudden and accidental. Until that time, the allegations must be seen as arguably within the comprehensive liability policy, resulting in a duty to defend.

*American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 452, 550 N.W.2d 475, 481 (1996).

Aero–Motive argues that it has incurred significant defense costs (i.e., attorneys' and consultants' fees and other investigation costs) in responding to the MDEQ's demands that it investigate the nature and extent of contamination at and from the subject property. Moreover, Aero–Motive claims that, despite repeated requests that Great American provide a defense, Great American has not conducted any independent investigation of the environmental damage claims in order to determine whether the damage was the result of "sudden and accidental" releases.

The Court is not prepared at this time to rule on Aero–Motive's request for summary judgment on its duty to defend

claim. Aero–Motive first asserted the request in its brief captioned "Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment," and reiterated the request in its brief captioned "Plaintiff's Motion for Reconsideration of Partial Summary Judgment." While the duty to defend claim may have merit, it is extraneous to the motion for reconsideration of the Court's Opinion of August 11, 2003. Moreover, the Court has not received any briefing from Great American regarding the matter. Aero–Motive should present its duty to defend argument in a separate motion, to which Great American may respond.

### IV. *Conclusion*

The Court will grant summary judgment for Great American with respect to Aero–Motive's claims regarding damage from materials in the disposal pit because releases from the disposal pit were not "sudden and accidental." The Court will deny Aero–Motive's motion for reconsideration of the Court's rulings with respect to the fires in the disposal pit, the degreaser, and the factory addition. Also, the Court will reject Aero–Motive's objections to summary judgment based on the production of claims file documents related to the Belvidere Landfill site. Finally, the Court will deny Aero–Motive's request for partial summary judgment on its duty to defend claims against Great American.

An Order consistent with this Opinion will be entered.