RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0102p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

JAY BROWN,

    *Plaintiff-Appellant,*

    *v.*

AJAX PAVING INDUSTRIES, INC.; AMERICAN CONTRACTORS INSURANCE GROUP, INC.; WARD NORTH AMERICA, LP; VERICLAIM, INC.; NOVAPRO RISK SOLUTIONS, LP; NOVAPRO US RISK, LLC; PAUL DROUILLARD,

    *Defendants-Appellees.*

No. 11-1391

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:10-cv-10137—Gerald E. Rosen, Chief District Judge.

Decided and Filed:  May 19, 2014

BEFORE:  SUTTON and COOK, Circuit Judges; MARBLEY, District Judge.[*]

---

#### COUNSEL

**ON BRIEF:**  Marshall Lasser, MARSHALL LASSER, P.C., Southfield, Michigan, for Appellant.  James J. Urban, Paul M. Mersino, BUTZEL LONG, Lansing, Michigan for Appellee Ajax Paving.  Joseph A. Fink, Jeffery V. Stuckey, D. Lee Khachaturian, DICKINSON WRIGHT PLLC, Lansing, Michigan, for Appellees American Contractors, Ward North, VeriClaim and NovaPro.  Daniel B. Tukel, BUTZEL LONG, Detroit, Michigan, Michael F. Smith, THE SMITH APPELLATE LAW FIRM, Washington, D.C., for Appellee Drouillard.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**OPINION**

---

SUTTON, Circuit Judge.   This case began as a dispute over who should pay for Jay Brown's shoulder injury.  Brown claimed that he suffered the injury while paving a road for his employer Ajax Paving, and that the company as a result owed him workers' compensation.  At the workers' compensation hearing, however, Ajax introduced medical testimony suggesting that the injury occurred outside of work.  While the case remained pending before the Michigan administrative agency, Brown and Ajax settled.

Unlike most settlements, this one did not end the controversy.  Brown thought that Ajax had introduced false medical testimony in order to deny or at least diminish his benefits and that it had done the same thing to other employees.  As a result, he sued Ajax and its alleged accomplices—insurers, claims administrators and the doctor—under the Racketeer Influenced and Corrupt Organizations Act.  The district court dismissed the complaint.

In order to sue under the Act, Brown must show that illegal racketeering activities have "injured [him] in his business or property."  18 U.S.C. § 1964(c); *see also id.* § 1962.  Brown attempts to meet this requirement by arguing that his employer's use of false testimony prompted him to accept a small settlement, and so cost him some of the workers' compensation benefits he otherwise deserved.  Not long ago this theory of injury might have worked.  This circuit used to treat "expected [workers' compensation] benefits" as "property" under the Act.  *Brown v. Cassens Transp. Co.*, 675 F.3d 946, 951 (6th Cir. 2012).

But last year, while the appeal in this case lay pending, the court reversed course while sitting en banc.  In *Jackson v. Sedgwick Claims Management Services,* a carbon copy of this case, we turned back a lawsuit challenging a scheme to introduce false testimony at workers' compensation hearings.  731 F.3d 556, 558 (6th Cir. 2013) (en banc).  We held that "loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to 'business or property' under RICO."  *Id.* at 566.  We gave two key reasons for our holding.  One was that workers' compensation compensates for *personal*

injury. The Act, which puts its spotlight on "business or property," does not cover losses that flow from personal injuries. *Id.* at 565–66. The other was that a contrary rule would allow the Act to police fraud in the workers' compensation system, planting the national banner on land traditionally patrolled by the States. The Act does not speak with enough clarity, we reasoned, to authorize such an intrusion. *Id.* at 566–69.

Unfortunately for Brown, *Jackson* resolves this appeal. Brown's alleged injury consists of getting less workers' compensation than he deserved. Because "loss or diminution" of expected workers' compensation "does not constitute an injury to 'business or property,'" *id.* at 566, Brown's claims must fail.

In response to all of this, Brown makes a partial but not a complete retreat. He submits that *Jackson* applies *only* to disputes between employer and employee, leaving in place his claims against the insurers, the claims administrators and the doctor. Yet this argument overlooks what happened in *Jackson* itself. The defendants in that case included not only an employer, but also a claims administrator and a doctor (in fact the same doctor sued in this case). The court rejected the claims against *all* of the defendants. *See id.* at 558–59. To limit *Jackson* to lawsuits against employers is to rewrite history.

This argument not only slights *Jackson*'s outcome, but it also disrespects its reasoning. *Jackson* explained that expected workers' compensation benefits stand outside the Act's perimeter because they flow from personal injuries. It added that extending the Act to expected workers' compensation benefits would clash with the States' customary control of their workers' compensation systems. Each argument applies with equal force whether an employee sues his employer or somebody else. Changing the defendant neither weakens the link between the benefits and personal injury nor dims the respect owed to the States' authority over workers' compensation.

Last but not least, Brown's attempted distinction between employers and others collides with the statute Congress enacted. The Act's applicability turns on the nature of the *injury*—that the plaintiff was "injured in his business or property." 18 U.S.C. § 1964(c). It does not turn on the nature of the *defendant*. We do not see how the same harm, loss of expected workers'

compensation benefits, could count as an injury to business or property against some defendants but not against other defendants.

Brown complains that our decision "immunize[s] any insurer, claim adjuster or medical examiner who fraudulently denied or conspired to deny" workers their benefits. Reply Br. at 5. That is an overstatement. States can and do impose liability upon people—employers as well as others—who defraud the workers' compensation system. Brown's own brief tells us that Michigan's courts would entertain claims that "an insurer, claim adjuster or medical examiner tortiously interfered with an employee's receipt of . . . benefits." *Id*. at 3. And the commission that heads the Michigan workers' compensation system punishes abuses of the workers' compensation process. *See* Mich. Comp. Laws Ann. § 418.861b. Our decision does not "immunize" anyone from these exercises of state power. Our decision means only that federal judges may not use the Act to seize this power for themselves. That of course was the whole point of *Jackson*.

The defendants' alleged actions in short did not injure Brown "in his business or property." 18 U.S.C. § 1964(c). Because this flaw undoes all of Brown's claims, we need not decide whether Brown's settlement with Ajax covers this case. Nor need we consider whether Brown has satisfied other requirements imposed by the Act.

For these reasons, we affirm.