NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0621n.06

No. 16-1692

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 22, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CRAIG SHEEHAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| STAR INSURANCE COMPANY, et al., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, and COOK, Circuit Judges.

ROGERS, Circuit Judge. After Craig Sheehan accidentally fell and injured his head at work, he sought workers' compensation from his employer. The employer's workers' compensation insurer sent Sheehan a letter requesting that he undergo an independent examination by a psychologist, which the insurer had arranged for that purpose. The notice indicated that "[f]ailure to report for said examination may result in the loss of your compensation benefits." Sheehan reported for the exam, which lasted 7 to 8 hours. Contrary to Sheehan's arguments, this does not amount to the tort of false imprisonment under Michigan common law. Sheehan's actions were sufficiently voluntary that there was no imprisonment, as the district court reasoned, and there is no indication that the Michigan Supreme Court would likely say otherwise. The district court therefore properly dismissed Sheehan's claim.

After Sheehan injured his head while on the job, allegedly resulting in difficulties with his memory, he sought compensation under Michigan's Workers' Disability Compensation Act from his employer, CJB Trucking, Inc. ("CJB"). Star was then the insurer for CJB's workers' compensation claims, and as a part of its standard procedure for handling a claim like Sheehan's, it sent him the letter that is the subject of this suit:

> In accordance with the Workers' Compensation Act, you are hereby requested to report for scheduled independent examination on Monday, September 30, 2013, at 9:00 a.m. at the office of:
>
> Dr. Manfred Greiffenstein
>
> . . . .
>
> Failure to report for said examination may result in the loss of your compensation benefits. Enclosed please find a check in the amount $92.96 for your mileage expense related to this appointment.
>
> If, for any reason you are unable to keep this appointment, please contact the writer.

Allegedly believing that he would forfeit any right to workers' compensation if he declined to submit to the exam, Sheehan reported six weeks later to Dr. Greiffenstein to undergo the requested "neuropsychological assessment."

A year and a half later Sheehan brought this putative class action suit in diversity against Star[1] alleging, among other things, that by sending the letter requesting an independent medical exam Star had falsely imprisoned him under Michigan law. Because the letter allegedly threatened him with the loss of his workers' compensation benefits if he refused to submit to the

---

[1] Meadowbrooks Insurance Group, Inc. was also named as a defendant in Sheehan's complaint, allegedly because the company had adjusted Sheehan's workers' compensation claim. However, the only claim left on appeal—of false imprisonment—runs solely against Star.

neuropsychological exam with Dr. Greiffenstein—an examination that Sheehan claims "inflicted on [him], mental anguish, outrage at loss of liberty, [and] emotional distress,"—and because Dr. Greiffenstein was allegedly also not a physician or surgeon authorized to practice medicine in Michigan, Sheehan claimed that Star had not only restrained him against his will, but had done so unlawfully under Michigan's workers' compensation law. He accordingly sought compensation in excess of $75,000, along with interest, costs, and attorney's fees.

The district court dismissed Sheehan's complaint, relying on the opinion in a virtually identical case, *Prieur v. Acuity*, 143 F. Supp. 3d 670 (E.D. Mich. 2015). The court noted four separate grounds justifying dismissal:

> First, Defendants neither seized anything of value from Plaintiff nor advised him that failure to appear for the [exam] *would* result in loss of benefits. Second, Plaintiff's voluntary compliance with a request to appear for [an exam] did not constitute the restraint on personal liberty or freedom of locomotion required to sustain a false imprisonment claim. Third, it does not appear that any Michigan court has yet recognized a false imprisonment claim of this nature. Finally, it is unlikely that Michigan courts will recognize such a claim, since doing so would subject an insurance carrier to liability anytime it requests verification of claim by requiring the claimant to undergo examination by someone other than a physician or surgeon licensed to practice medicine under the law of the state—whether it be a physical or mental examination or an examination under oath or deposition.

*Sheehan v. Star Ins. Co.*, 2016 WL 2609784, at *2 (E.D. Mich. May 6, 2016) (internal quotation marks and citations omitted). Sheehan now appeals the dismissal of his false imprisonment claim.

Sheehan's case hinges on his contention that the letter Star sent him was not a request but a threat, and that under Michigan's law of false imprisonment—which, in a diversity suit like this, this court is bound to apply, *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)—that threat was coercive enough to amount to arrest or restraint, the first

element of a claim of false imprisonment. Michigan law, however, does not appear to recognize a theory of personal coercion capacious enough to cover a claim of arrest or restraint where, as in this case, the plaintiff has voluntarily submitted to that restraint. Because Sheehan has also pointed to no case that would suggest the Michigan Supreme Court would likely say otherwise, the district court's dismissal of Sheehan's claim of false imprisonment—reviewed de novo, *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 832 (6th Cir. 2015)—was proper.

Sheehan's claim of false imprisonment fails because Star did not restrain him in any sense recognized by Michigan law. Michigan law requires for false imprisonment that the defendant have somehow constrained the plaintiff's "liberty or freedom of movement," whether manually or in some other way. *Tumbarella v. Kroger Co.*, 271 N.W.2d 284, 287 (Mich. Ct. App. 1978) (citing *Stowers v. Wolodzko*, 191 N.W.2d 355, 363 (Mich. 1971)). Because Sheehan cannot contend he was manually seized by Star, the only theory of restraint open to him arises from the supposedly coercive "threat" that Star issued in its letter, informing him that if he declined to undergo an independent medical examination he "may" have faced the loss of any benefits he was due under the Act. But there are two related flaws in Sheehan's theory. First is that Star's letter is more naturally read as a request, or at most a request accompanied by a warning, rather than an actual threat. The letter, after all, only "requested"—not demanded or ordered—Sheehan to report for the examination with Dr. Greiffenstein. Although the letter does open—intimidatingly perhaps—by invoking Michigan law, and concludes by drawing Sheehan's attention to the very real risk under that Act that he might have forfeited those benefits if he had declined to report for the exam, *see* MCLS § 418.385, that is all the letter does: warn Sheehan of what *might* have followed if he declined to undergo the examination. But that warning hardly transforms Star's request into a threat—no more than a warning about oncoming traffic would

make a threat out of a parent's plea for her child to quit playing on a busy street. Indeed, this impression is only strengthened by the letter's final line, asking Sheehan to contact the letter's author if "for any reason" he could not make the appointment—apparently giving Sheehan the kind of freedom to refuse Star's request that one would hardly expect of a genuine threat.

Michigan law, moreover, does not appear to recognize a theory of personal coercion as broad as Sheehan's. On the contrary, the Michigan courts have made clear that where a plaintiff voluntarily complies with a request that results in his physical confinement—such as when a shopper chooses to submit to a search at the request of store security—there can be no "restraint" in its tortious sense, *Clarke v. K-Mart Corp.*, 495 N.W.2d 820, 823 (Mich. Ct. App. 1992) (citing *Bonkowski v. Arlan's Dep't Store*, 174 N.W.2d 765 (Mich. 1970)). In this case, where Star's letter also only "requested" Sheehan to report for an independent medical examination, his decision to comply in the face of such a gently-worded letter was likewise too voluntary to amount to "personal coercion" under Michigan law. Lacking a colorable theory of personal coercion Sheehan consequently cannot make out a proper claim of imprisonment under Michigan common law.

The example of "personal coercion" raised in *Clarke* also does not undermine this conclusion. Sheehan fairly points out that the *Clarke* court appears to have endorsed a theory of restraint based on personal coercion, giving the Second Restatement's example of a store owner who seizes the purse of a shopper suspected of shoplifting and thus tortiously "confines" the shopper in the store, fearing as the shopper reasonably would that by leaving the purse behind she might lose it. *Clarke*, 495 N.W.2d at 823 (quoting Restatement (Second) of Torts § 40A (1979)). But the principle of that example flatly does not apply in a case like Sheehan's, where the alleged act of confinement was not otherwise wrongful and where the supposed threat—

unlike that in the Restatement example—was far from immediate. Extension of the personal property seizure example to a warning of future consequences would turn a huge category of ordinary communications into potential false imprisonment claims. We are cited no cases that support such an expansion of the tort.

The judgment of the district court is affirmed.