NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0198n.06

Case No. 17-1823

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 16, 2018
DEBORAH S. HUNT, Clerk

NANCY GUCWA; MARK MARUSZA, )
)
    Plaintiffs-Appellants, )
)
v. )
)
JEFFREY LAWLEY; HARVEY G. AGER; )
W. JOHN BAKER; BARRY RUBIN; )
ACCIDENT FUND INSURANCE )
COMPANY OF AMERICA, )
)
    Defendants-Appellees. )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

_____/

Before: MERRITT, GRIFFIN, and DONALD, Circuit Judges.

**MERRITT, Circuit Judge.** This is an appeal from the district court's dismissal of Mark Marusza's and Nancy Gucwa's complaint, which alleged four causes of action. Marusza suffered a serious work-related accident in fall 2011. Marusza alleges that defendant Accident Fund Insurance Company neglected to pay their share of Marusza's medical bills, which resulted in Medicare paying for a portion of his bills. Accident Fund likewise refused to pay Gucwa—Marusza's long-term, live-in girlfriend—for the attendant care she provided Marusza. Accident Fund hired the four defendant physicians to examine Marusza's condition.

Marusza and Gucwa allege that: (1) Accident Fund and the defendant physicians defrauded Marusza, Gucwa, and others of benefits, in violation of the Racketeer Influenced and Corrupt Organizations Act; (2) Marusza is entitled to double damages under the Medicare Secondary Payer Act; (3) the defendant doctors tortiously interfered with Marusza's contractual

relationship and/or business expectancy by inducing Accident Fund to deny his benefits; and (4) Accident Fund falsely imprisoned Marusza by requiring him to attend an examination with a neuropsychologist.

The district court dismissed each claim under Rule 12(b)(6) for failure to state a claim. Plaintiffs appeal and additionally argue that the district court abused its discretion by granting Plaintiffs' request to exercise jurisdiction over the state law tort claims.

We affirm the district court.

## FACTUAL BACKGROUND

A sport-utility vehicle struck a pedestrian, Mark Marusza, on October 18, 2011, while Marusza was on the job. Marusza sustained injuries to his brain, shoulders, cervical spine, and ribs. Following his release from the hospital, his live-in "significant other" of over twenty years, Nancy Gucwa, provided attendant care services for his brain and spinal injuries. According to Plaintiffs, Marusza expressly agreed to pay Gucwa for her care. Gucwa has no background as a professional healthcare provider.

Marusza's workers' compensation administrator—Accident Fund Insurance Company— initially paid Marusza's claims for Gucwa's care but terminated payment in July 2012. Accident Fund retained the four defendant physicians—Dr. Jeffrey Lawley, Dr. Harvey Ager, Dr. W. John Baker, and Dr. Barry Rubin—to examine Marusza's disability. Following the doctors' reports, Accident Fund refused to pay for certain treatments, including drugs to control injury-induced aggression, psychiatric hospitalization, pain medication, attendant care, physical therapy, doctors' visits, nurse case management, and surgeries for his neck, back, and shoulders. Marusza alleges that Medicare paid $15,665.00 of Marusza's treatment costs which Accident Fund had refused to cover.

On March 5, 2015, Plaintiffs filed a complaint in the U.S. District Court for the Eastern District of Michigan naming Accident Fund and the four doctors as defendants. Plaintiffs filed their First Amended Complaint the next day. Each defendant moved to dismiss for failure to state a claim upon which relief can be granted in spring 2015. *See* Fed. R. Civ. P. 12(b)(6).

Meanwhile, Marusza also sought help from the Michigan Workers' Compensation Agency. In May 2016, Workers' Compensation Board Magistrate Beatrice B. Logan issued her opinion that Marusza required treatment for a mild traumatic brain injury, vision problems, and injuries to his neck, shoulders, and lower back caused by the 2011 accident. Because Marusza lost all wage earning capacity in the accident, Magistrate Logan ordered Accident Fund to pay Marusza workers' compensation benefits owed from October 19, 2011, onward at the rate of $592.88 per week and for reasonable and necessary medical treatment of Marusza's employment-related conditions. On August 12, 2016, Accident Fund paid Marusza $74,382.00. According to Plaintiffs, Gucwa has not received compensation from Accident Fund or Marusza for the attendant care services she provided.

Following the Board's decision, Plaintiffs filed a Second Amended Complaint. In January 2017, the district court granted the defendants' motions to dismiss each claim, denied Dr. Rubin's and Plaintiffs' motions for sanctions against each other, and denied Plaintiffs' motion for leave to amend their Second Amended Complaint. *Gucwa v. Lawley*, No. 15-10815, 2017 WL 282045, at \*1 (E.D. Mich. Jan. 23, 2017), *reconsideration denied*, No. 15-10815, 2017 WL 2831691 (E.D. Mich. June 29, 2017).

Plaintiffs now appeal and argue that the district court abused its discretion in exercising jurisdiction over their state claims.

## STANDARD OF REVIEW

We review de novo a district court's grant of a motion to dismiss. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations are not entitled to the presumption of truth. *Id.* at 678.

The district court's decision to dismiss pendant state claims with prejudice after it has dismissed all federal claims is reviewed for an abuse of discretion. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

## I.    RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

Plaintiffs appeal the dismissal of their claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  18 U.S.C. §§ 1961–68.  Plaintiffs allege that defendants Accident Fund and Doctors Ager, Baker, and Lawley engaged in a racketeering scheme of mail and wire fraud affecting interstate commerce by preparing and exchanging false medical reports to justify the denial of workers' compensation benefits.  *See* 18 U.S.C. § 1962(c).

A civil plaintiff alleging a civil RICO claim must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted).  Although Congress "directed courts to give the statute a liberal construction," *id.* at 498, "the plaintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation."  *Id.* at 496; *see also* 18 U.S.C. § 1964(c).

### A.    *Marusza's RICO Claim*

The district court found that Marusza lacked standing because his personal injury does not qualify as an injury to "business or property" as contemplated by the RICO statute.  *Gucwa*, 2017 WL 282045, at *3–4.

We affirm.  In *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, an en banc panel of this court expressly held that "racketeering activity leading to a loss or diminution of benefits the plaintiff expects to receive under a workers' compensation scheme does not constitute an injury to 'business or property' under RICO."  731 F.3d 556, 566 (6th Cir. 2013) (en banc).

In his appellate brief, Marusza distinguishes his claims against the doctors from *Jackson* because he brings these claims against "independent medical examiners."  However, in another case litigated by Marusza's counsel, we held that *Jackson* "applies with equal force whether an employee sues his employer or somebody else" because the reasoning of *Jackson* relies on the fact that such benefits "flow from personal injuries."  *Brown v. Ajax Paving Indus., Inc.*, 752 F.3d 656, 658 (6th Cir. 2014).  "Changing the defendant neither weakens the link between the benefits and personal injury nor dims the respect owed to the States' authority over workers' compensation."  *Id.* at 658.

Thus, *Jackson* squarely forecloses Marusza's RICO claims. This panel remains bound by *Jackson.* Prior published precedent "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this court sitting en banc overrules the prior decision." *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Neither of these requisite conditions have occurred, and so we must affirm the district court.

### B.    *Gucwa's RICO Claim*

Plaintiff Gucwa claims that Accident Fund owes her property damages equivalent to her bill for services rendered when she took care of her boyfriend, Marusza. The district court found that "[h]er claimed damages are too intimately connected with Marusza's personal injury underlying his workers' compensation claim to constitute an injury to business or property that is recoverable under RICO." *Gucwa*, 2017 WL 282045, at *5.

We affirm. Even though personal injuries may lead to monetary damages, such personal injuries and their associated pecuniary losses—including medical expenses—do not confer relief under § 1964(c). *Jackson*, 731 F.3d at 565–66. "[A]n award of benefits under a workers' compensation system and any dispute over those benefits are inextricably intertwined with a personal injury giving rise to the benefits." *Id.* at 566.

Gucwa argues that district courts have held that a professional medical provider's loss of reimbursement suffices as an injury to business or property. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4724829, at *12 (E.D. Mich. Aug. 10, 2015). However, Gucwa does not claim to be licensed, registered, or certified as a healthcare provider, practitioner, or caregiver; nor does she claim to be part of any commercial healthcare enterprise. According to the complaint, Gucwa is a layperson providing healthcare to her romantic partner. Any financial injury she suffered was personal, and "the phrase 'business or property' . . . exclude[s] personal injuries suffered." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). *Jackson* made clear that bills for rehabilitation services and medical expenses "merely reflect the pecuniary losses associated with the personal injury." 731 F.3d at 566. "[B]oth personal injuries and pecuniary losses flowing from those personal injuries

fail to confer relief under § 1964(c)." *Id.* at 565–66. We conclude that Gucwa has no cognizable RICO claim, and we affirm the district court.

## II.    MEDICARE SECONDARY PAYER ACT

Congress enacted the Medicare Secondary Payer Act in 1980 to reduce federal healthcare expenses. The Act makes Medicare a secondary payer for a beneficiary's medical services when payment is available from a different primary payer, such as a workers' compensation plan. 42 U.S.C. § 1395y(b)(2)(ii). If that primary payer neglects its obligation to pay for a particular medical service, Medicare can cover the cost conditionally and seek reimbursement from the primary payer. 42 U.S.C. § 1395y(b)(2)(B)).

The Act also creates a private right of action with double recovery against primary payers who fail to provide the appropriate payment or reimbursement. 42 U.S.C. § 1395y(b)(3)(A). Marusza alleges that Accident Fund defrauded Medicare by forcing them to pay $15,665.00 in medical bills for which Accident Fund was responsible, and Marusza seeks double damages under the Act.

As the party invoking federal subject matter jurisdiction, Plaintiffs bear the burden of establishing "the 'irreducible constitutional minimum' of standing": that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48; *see also Lyshe v. Levy*, 854 F.3d 855, 860 (6th Cir. 2017) (citation omitted) ("[S]tanding is not met simply because a statute creates a legal obligation and allows a private right of action for failing to fulfil this obligation.").

The district court dismissed Marusza's claim under the Act because he had not alleged financial harm. We affirm. Because the Medicare Secondary Payer Act is not a *qui tam* statute, the financial injury suffered by the government does not confer standing upon other parties. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 919 (6th Cir. 2008). Private plaintiffs must suffer

their own individual harm; for instance, a private plaintiff may allege that they were paid less by Medicare than they would have been paid by the primary payer. *See Bio-Medical Applications of Tenn., Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 296 n.17 (6th Cir. 2011).

Marusza argues that this circuit held in *Stalley* that a plaintiff has standing under the Act as long as they are a Medicare beneficiary denied coverage by a primary payer. *See Stalley*, 517 F.3d at 916. This misrepresents *Stalley*. In *Stalley*, we noted that a particular plaintiff seeking relief under the Act as a "self-appointed bounty hunter," *id.* at 919, lacked "standing in the traditional sense" under the statute because he was not a Medicare beneficiary, Medicare eligible, or denied coverage by a primary payer. *Id.* at 916. We did not hold that all plaintiffs who *do* satisfy those three conditions have standing; such a holding would be directly at odds with the Supreme Court's rulings in *Lujan*, 504 U.S. 555, and *Spokeo*, 136 S. Ct. 1540.

Marusza also cites the Second Circuit case *Woods v. Empire Health Choice, Inc.*, as authority supporting his case. 574 F.3d 92, 101 (2d Cir. 2009). The Second Circuit concluded that the Medicare Secondary Payer Act

> merely enables a private party to bring an action to recover from a private insurer *only where that private party has itself suffered an injury* because a primary plan has failed to make a required payment to or on behalf of it.

*Id.* (emphasis added). This language contradicts Marusza's position. A plaintiff does not satisfy the elements of standing simply by showing that the insurer failed to make payments "on [his] behalf"; the plaintiff must show that he "[him]self suffered an injury *because* a primary plan has failed" to pay. *Id.* (emphasis added). Contrary to Marusza's brief, it is not enough that Marusza suffered a physical injury from the car accident, because that is not the kind of injury contemplated by the Act. Marusza must allege that he was injured by Accident Fund's failure to pay. Marusza's complaint alleged merely that Medicare suffered a financial injury when Accident Fund failed to pay. Therefore the complaint failed to establish that Marusza himself had standing.

After the district court's decision, Marusza alleged for the first time in his February 6 motion for rehearing and reconsideration that he had suffered financial loss. *Gucwa*, 2017 WL

2831691, at \*2. The district court correctly denied the motion because "a motion for reconsideration may not be used to raise issues that could have been raised in the previous motion." *Id.* at \*2 (quoting *Aero-Motive Co. Great Am. Ins.*, 302 F.Supp. 2d 738, 740 (W.D. Mich. 2003)). Marusza had multiple prior opportunities to address the standing issue. Furthermore, the conclusory allegations in the affidavit stated simply that Marusza had to "pay co-pays because Medicare does not pay the entire bill," and failed to provide any receipts, billing statements, or other information about the amount, recipient, or date of the co-pays. *Id.* at \*3.

Marusza argues that the district court should have granted him leave to amend his affidavit a third time to address the lack of standing. Marusza had filed a motion for leave to amend the Second Amended Complaint concerning the tortious interference claims on November 21, 2016, and Marusza does not appeal the denial of that motion. Marusza made no request for leave to address the lack of personal financial harm until the motion for reconsideration.

On appeal, this court will not consider Plaintiffs' affidavits from the motion for reconsideration because "[a]rguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal." *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 692 (6th Cir. 2012). This rule "eases appellate review 'by having the district court first consider the issue,'" and it "ensures fairness to litigants by preventing surprise issues from appearing on appeal." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (first quoting *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir.1993); then quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). On rare occasion, this court may exercise its discretion to deviate from this rule when plaintiffs demonstrate that their case is particularly exceptional or that the rule will result in a miscarriage of justice, but Marusza and Gucwa have not demonstrated that such a deviation would be justified. *See Scottsdale*, 513 F.3d at 552.

Because Marusza did not allege personal financial loss in the original complaint or the two amended complaints, he has not established standing. Thus, we affirm the district court.

## III. TORTIOUS INTERFERENCE

Plaintiffs allege that defendants Doctors Ager, Baker, Lawley, and Rubin engaged in tortious interference with contract or business expectancy by supplying false medical reports

concerning Marusza's health and thereby inducing Accident Fund to breach its workers' compensation insurance contract with Marusza's employer. Plaintiffs alleged that Accident Fund purposefully chose doctors who would report that the claimant had no work-related disability regardless of the truth. Plaintiffs incorporated all of the allegations of the complaint into their tortious interference claims.

Under Michigan law, tortious interference with a contract or contractual relations is an intentional tort requiring proof of "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 348 (Mich. Ct. App. 2013). "[I]t is an essential element of a claim of tortious interference with a contract that the defendant 'unjustifiably instigated or induced' the party to breach its contract." *Id.* The Michigan Court of Appeals has found no tortious interference with a contract when the contractual relationship at issue fell through before the defendant became involved. *Id.* at 349.

Tortious interference with a business expectancy has somewhat different elements under Michigan law, but it retains intentional inducement or causation as an element:

> The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005).

Here, the district court dismissed all of Plaintiffs' tortious interference claims because they contradict the incorporated RICO allegations. Taking the facts alleged in the complaint as true, it could not be the case that the physicians induced the denial of benefits if it were also true that the reason Accident Fund hired these specific physicians was to "provid[e] a pretext for the denial" of benefits. *Gucwa*, 2017 WL 282045, at *6.

We affirm. We agree that the tortious interference claims are irreconcilable with the complaint's allegation that Accident Fund hired these particular doctors—in Plaintiffs' words, "hired gun[s]"—specifically to legitimize their scheme to deny benefits. *Cf. Mino v. Clio Sch. Dist.*, 661 N.W.2d 586, 597–98 (Mich. Ct. App. 2003) (finding no tortious interference when defendants provided negative information about the plaintiff to an employer who sought out the defendants' opinion).

Plaintiffs argue that this inconsistency is permissible because Federal Rule of Civil Procedure 8(d)(3) allows a party to "state as many separate claims or defenses as it has, regardless of consistency." Plaintiffs first raised this argument in a motion for reconsideration denied by the district court. *Gucwa*, 2017 WL 2831691, at *4. "Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal." *Evanston Ins. Co.*, 683 F.3d at 692. Although we need not consider this new argument, Rule 8(d)(3) does not change the outcome of this case. Plaintiffs' tortious interference claims explicitly incorporate all allegations of the complaint, and the complaint offers no indication that any of the facts or claims have been alleged in the alternative. *Cf. Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000) ("While the [plaintiffs] need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing.").

Finally, Plaintiffs argue for the first time on appeal that the district court abused its discretion in exercising supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) and should have instead dismissed the claims without prejudice. "[T]he [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter," and "[t]hus, the court's determination may be reviewed for abuse of discretion, but may not be raised at any time as a jurisdictional defect." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009). This argument is waived because it has been raised for the first time on appeal.

Were it not waived, this court would nonetheless conclude that the district court properly exercised its discretion because "the interests of judicial economy and the avoidance of multiplicity of litigation" weighed in favor of deciding the straight-forward state law issues at hand. *Cf. Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

Furthermore, Plaintiffs themselves requested that the district court exercise jurisdiction over the tortious interference claims under 28 U.S.C. §1367(a) because the state claims were so intimately related to the RICO and Medicare Secondary Payer Act claims as to form part of the same case or controversy. Under the doctrine of invited error—sometimes referred to as "cardinal rule of appellate review"—"a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit." *Harvis v. Roadway Express Inc.*, 923 F.2d 59, 60 (6th Cir. 1991).

## IV.     FALSE IMPRISONMENT

Finally, Marusza alleges that Accident Fund falsely imprisoned him by illegally threatening him with the loss of his workers' compensation benefits if he did not attend examinations by Dr. W. John Baker.[1]

Under Michigan law, "[f]alse imprisonment is the unlawful restraint of a person's liberty or freedom of movement." *Tumbarella v. Kroger Co.*, 271 N.W.2d 284, 287 (Mich. Ct. App. 1978). The imprisonment is not false unless the imprisoner lacked the "right or authority to do so." *Id*. Although "manual seizure is not necessary, there must be that or its equivalent in some form of personal coercion." *Clarke v. K Mart Corp.*, 495 N.W.2d 820, 823 (Mich. Ct. App. 1992) (per curiam) (quoting *Tumbarella*, 271 N.W.2d at 287).

Marusza was required to attend two "grueling" eight-hour neuropsychological examinations. Marusza acknowledges that the Michigan Workmen's Disability Compensation Act permits the employer to compel attendance at an examination by a physician or surgeon. *See* Mich. Comp. Laws Ann. § 418.385. However, Marusza contends that Dr. Baker—a neuropsychologist—is not a physician or surgeon under Michigan law and that Accident Fund should have instead requested that a workers' compensation magistrate order him to attend.

The district court dismissed Marusza's false imprisonment claim because his counsel conceded that the claim must fail in light of *Sheehan v. Star Ins. Co.*, 664 F. App'x 514, 516 (6th Cir. 2016). *See Gucwa*, 2017 WL 282045, at *7. *Sheehan* is a recent case litigated by Marusza's

---

[1] Marusza stipulated the dismissal of his claim against Dr. Baker. Even if this claim were considered, it would fail for the same reasons as the claim against Accident Fund.

own counsel with facts mirroring this case.[2]   An employee seeking workers' compensation underwent a neuropsychological assessment after his insurer sent him a letter indicating that failure to do so may result in the loss of compensation benefits.  *Sheehan*, 664 F. App'x at 514–16.  We held that the letter merely constituted a request informing Sheehan of the very real risk that he may forfeit his benefits.  *Id.* at 516.  The insurer did not manually restrain Sheehan's liberty, and such a letter was not coercive enough to amount to arrest or restraint.  *Id.*  Furthermore, Sheehan voluntarily complied with the request and consented to being physically confined for the duration of the medical exam.  *Id.*

Given the numerous factual parallels, we likewise affirm the district court's dismissal of Marusza's claim for the same reasons set out in *Sheehan*.  We need not attempt to resolve the question of whether a neuropsychologist qualifies as a physician or surgeon within the meaning of M.C.L. § 418.385 because *Sheehan* held that no imprisonment—false or otherwise—occurred under circumstances such as these.[3]  664 F. App'x at 516–17.

Finally, Plaintiffs also claim that the district court abused its discretion by exercising jurisdiction over the false imprisonment claim, despite Plaintiffs' argument to the contrary in the Second Amended Complaint, which claimed that the state law claims were "intimately related" to the RICO and Medicare Secondary Payer Act claims.  This argument will be rejected here for the same reasons that it was rejected on the tortious interference claim.

## V.     CONCLUSION

The case law of this Circuit and the state of Michigan forecloses Plaintiffs' RICO, Medicare Secondary Payer Act, tortious interference, and false imprisonment claims.  For the foregoing reasons, the district court's order is **AFFIRMED**.

---

[2] Notably, the district court dismissing the plaintiff's claim in *Sheehan* cited to yet another "substantively identical" case which had been litigated by Marusza's counsel and dismissed by the court.  *Sheehan v. Star Ins. Co.*, No. 15-12601, 2016 WL 2609784, at *1 (E.D. Mich. May 6, 2016), *aff'd*, 664 F. App'x 514 (6th Cir. 2016) (citing *Prieur v. Acuity*, 143 F. Supp. 3d 670 (E.D. Mich. 2015)).

[3] Although *Sheehan* did not expressly resolve the issue, the conclusion that Sheehan's confinement "was not otherwise wrongful" strongly suggests that the court did not consider the insurer's request that he see a neuropsychologist to be unlawful.  664 F. App'x at 517.